IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RANDI LEE WILSON**, | Case No. 3:17-cv-0768-YY |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **GUARDIAN MANAGEMENT, LLC dba MOUTAIN KNOLL, KRISTINE HERB, and DOES 1-2**, | |
| Defendants. | |

Shannon D. Sims, Attorney at Law, 610 SW Alder, Suite 502, Portland, OR 97205. Of Attorneys for Plaintiff.

Jonathan Henderson and Christopher J. Drotzmann, DAVIS ROTHWELL EARLE & XOCHIHUA, PC, 200 SW Market Street, Suite 1800, Portland, OR 97201-5745. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Randi Wilson ("Plaintiff") brings this lawsuit against Guardian Management, LLC d/b/a Mountain Knoll ("Guardian"), Kristine Herb, and two John or Jane Does (collectively "Defendants"). Plaintiff alleges that Guardian negligently allowed its tenants to smoke on its property, which resulted in a fire damaging Plaintiff's property. Plaintiff also alleges housing

PAGE 1 – OPINION AND ORDER

discrimination under the federal Fair Housing Act ("FHA") and its state counterpart. Defendants move for summary judgment on all of Plaintiff's claims.

United States Magistrate Judge Youlee Yim You issued a Findings and Recommendation in this case on December 12, 2018. ECF 41. Judge You had previously issued a findings and recommendation recommending that summary judgment be granted against Plaintiff's discrimination claim and denied on Plaintiff's negligence claim. ECF 32. Judge You withdrew her findings and recommendation and construed Defendant's objections as a motion for reconsideration. ECF 35, 37. On reconsideration, Judge You recommended that Defendants' motion for summary judgment be granted on all claims and that the case be dismissed with prejudice. Plaintiff filed objections, ECF 43, to which Defendants responded. ECF 45. For the reasons discussed below, after a *de novo* review, the Court agrees with the recommendation to grant summary judgment on all claims, but does not adopt the reasoning related to Plaintiff's housing discrimination claims. Accordingly, the Court adopts in part the Findings and Recommendation.

**STANDARDS**

**A. Federal Magistrates Act**

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to

PAGE 2 – OPINION AND ORDER

require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

**B. Summary Judgment**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

### C. Housing Discrimination Claims

The FHA prohibits discriminating against any person by refusing to "sell or rent" a dwelling or by discriminating "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a)-(b). "FHA claims . . . may be brought under theories of both disparate treatment and disparate impact." *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 711 (9th Cir. 2009). Courts "analyze FHA . . . disparate treatment claims under Title VII's three-stage *McDonnell Douglas/Burdine* test." *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Accordingly, to establish a *prima facie* claim of disparate treatment based on sex (or gender), a plaintiff must first show that: (1) she is a member of a protected class; (2) she was denied a rental relationship or otherwise treated differently in the terms, conditions, or privileges of her rental relationship or in the provision of services or facilities to her as a tenant; and (3) the different treatment was, at least in part, because of her sex (or gender). *See* 42 U.S.C. § 3604(b).

Oregon's fair housing law, Oregon Revised Statute § 659A.145, mirrors the FHA and the two statutes are interpreted identically. *See Marquard v. New Penn Financial, LLC*, 2017 WL 4227685, at *12 (D. Or. Sept. 22, 2017) (citing *Fishing Rock Owners' Ass'n v. Roberts*, 6 F. Supp. 3d 1132, 1138 n.1 (D. Or. 2014)). The Court's resolution of Plaintiff's FHA claim will therefore also decide the outcome of her state law housing discrimination claim.

## DISCUSSION

Plaintiff filed an objection to the Findings and Recommendation. ECF 43. Plaintiff objects to the portions of the recommendation dismissing Plaintiff's claims for negligence and

PAGE 4 – OPINION AND ORDER

for housing discrimination under both federal and Oregon fair housing acts. The Court reviews these issues *de novo*.

## A. Negligence

Plaintiff objects that Defendants' arguments relating to negligence raise genuine disputes of material fact. The Court has reviewed the objections and the record and briefing before Judge You. After a *de novo* review, the agrees with Judge You's reasoning and adopts this portion of the Findings and Recommendation.

## B. Housing Discrimination

Plaintiff objects to the portion of the Findings and Recommendation concluding that Plaintiff's housing discrimination claims be dismissed because Plaintiff's status as a domestic violence victim is not a protected class under the FHA. Plaintiff argues that the FHA protects victims of domestic violence, noting that Housing and Urban Development ("HUD") enforces such discriminatory conduct as a violation of the FHA. Plaintiff also cites to a 2011 HUD memorandum and a consent decree, approved by the U.S. District Court for the District of Oregon, in which HUD had issued a charge for discrimination against domestic violence victims. Defendants respond that Plaintiff's objections are untimely, that the fair housing laws do not include victims of domestic violence as a protected class, and that, even if they did Plaintiff has not shown a genuine issue for trial.

### 1. Timeliness

Defendants argue that Plaintiff's objections to the second Findings and Recommendations relating to the housing discrimination claims are not timely because Plaintiff did not originally object to the housing discrimination portion of Judge You's first Findings and Recommendation. Judge You, however, withdrew her first Findings and Recommendation.

Judge You issued a second Findings and Recommendation, with a new deadline for objections. Plaintiff filed her objections before this second deadline. Accordingly, they are timely.

### 2. Victims of Domestic Violence Under the FHA

The FHA does not expressly include domestic violence victims or survivors as protected classes. *See* 42 U.S.C. § 3604(a) (making unlawful discriminatory practices based on "race, color, religion, sex, familial status, or national origin"). There is, however, substantial case law and scholarship and suggesting that claims alleging discrimination based on status as a victim of domestic violence are not *per se* invalid. These authorities suggest that domestic violence victims may bring a claim for housing discrimination under the FHA through a theory of sex (sometimes used interchangeably with gender) discrimination. *See, e.g.*, *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 872 (S.D. Ohio 2013) (finding allegations that a property management company "was aware, or should have been aware, that Plaintiff was the victim of longstanding and continuing domestic violence . . . could give rise to an inference that ZMHA acted with intent to discriminate on the basis of gender"); *Meister v. Kansas City*, 2011 WL 765887, at *6 (D. Kan. Feb. 25, 2011) (noting that "evidence that defendant knew that domestic violence caused damage to plaintiff's housing unit would help support a claim that she was evicted under circumstances giving rise to an inference of sex discrimination"); Cecily Fuhr, *Cause of Action Under Fair Housing Act (42 U.S.C.A. §§ 3601 et seq.) for Discrimination Against Victim of Domestic Violence* 74 Causes of Action 2d 107 (March 2019 update) ("[C]ourts have held that [sex or gender] discrimination can be shown through disparate treatment of domestic violence victims compared to other, similarly situated tenants and applicants for housing."); Kristen M. Ross, *Eviction, Discrimination, and Domestic Violence: Unfair Housing Practices Against Domestic Violence Survivors*, 18 Hastings Women's L.J. 249, 264 (2007) ("[C]ourts have entertained the notion that victims [of domestic abuse] may [bring] a

case [under the FHA] for sex discrimination under the theory of disparate treatment and/or disparate impact."); Elizabeth M. Whitehorn, *Unlawful Evictions of Female Victims of Domestic Violence: Extending Title VII's Sex Stereotyping Theories to the Fair Housing Act*, 101 Nw. U. L. Rev. 1419, 1447 (2007) (describing courts that extended "sex stereotyping theories used under Title VII" to allow "a female victim of domestic violence who has been evicted based on her abuser's criminal actions [to] state a claim for sex discrimination under the [FHA]").

Moreover, in 2011, then-HUD Deputy Assistant Secretary for Enforcement and Programs Sara K. Pratt issued a memorandum to HUD agency personnel providing "guidance . . . on assessing claims by domestic violence victims of housing discrimination under the Fair Housing Act."[1] The report notes:

> Survivors of domestic violence often face housing discrimination because of their history or the acts of their abusers. Congress has acknowledged that "women and families across the country are being discriminated against, denied access to, and even evicted from public and subsidized housing because of their status as victims of domestic violence.

*Id.* The report explains that discrimination against victims of domestic violence "because of their history or the acts of their abusers" may be illegal under the FHA. *Id.*

Although the Ninth Circuit has not yet addressed the issue,[2] district courts around the country have recognized that evicting female tenants who are victims of domestic violence can,

---

[1] HUD, *Assessing Claims of Housing Discrimination against Victims of Domestic Violence under the Fair Housing Act (FHA) and the Violence against Women Act (VAWA)*, *available at* http://www.hud.gov/offices/fheo/library/11-domestic-violence-memo-with-attachment.pdf.

[2] In an unpublished opinion, the Ninth Circuit declined to address the issue. *Creason v. Sigh*, 650 F. App'x 462, 463 n.2 (9th Cir. 2016) ("The district court assumed without deciding that 'evicting a tenant with a valid domestic violence defense could constitute discrimination on the basis of sex in violation of Section 3604' of the FHA because the majority of domestic violence victims are women. In light of our disposition, we have no need to address this issue.").

in certain circumstances, constitute sex or gender discrimination under the FHA. *See Dickinson*, 975 F. Supp. 2d at 872 (finding that evicting a plaintiff when defendant "was aware, or should have been aware, that Plaintiff was the victim of longstanding and continuing domestic violence" could support a claim for sex discrimination under the FHA); *Creason v. Singh*, 2013 WL 6185596, at *1, *4 (N.D. Cal. Nov. 26, 2013) (finding that "the eviction of a tenant because she is a victim of domestic violence might constitute unlawful [sex] discrimination under the [FHA]"); *Meister*, 2011 WL 765887, at *6 (allowing a claim to proceed under a sex discrimination theory where a plaintiff was "evicted shortly after her husband criminally attacked [the plaintiff] in [her] apartment"); *Bouley v. Young-Sabourin*, 394 F. Supp. 2d 675, 678 (D. Vt. 2005) (finding a plaintiff had "demonstrated a *prima facie* case" for sex discrimination under the FHA because, "less than 72 hours after the plaintiff's husband assaulted her," the defendant attempted to evict her).

In *Bouley*, one of the earlier cases accepting this theory, the district court held that a plaintiff tenant had demonstrated a *prima facie* case for housing discrimination where, less than 72 hours after her husband assaulted her, the defendant landlord attempted to evict her. *Bouley*, 394 F. Supp. 2d at 678. Additionally, the court noted that there was evidence suggesting that the eviction "may have been prompted by the plaintiff's refusal to discuss religion with the defendant." *Id.* The court concluded that "[t]hese claims, if proven, could constitute unlawful discrimination under the Fair Housing Act." *Id.* Other courts and authorities have followed *Bouley* in accepting that under certain circumstances evicting a victim of domestic violence could amount to sex or gender discrimination in violation of the FHA.

There are some courts, however, that have dismissed claims of domestic violence victims under the FHA based simply on the fact that being a domestic violence victim is not itself a

protected status under the FHA. *See, e.g.*, *Delgado v. Morris Cty. Hous. Auth.*, 2018 WL 5962478, at *5 (D.N.J. Nov. 13, 2018); *Barnett v. Pickering*, 2010 WL 144359, at *2 (D. N.H. Jan. 8, 2010). The mere fact that being a victim of domestic violence is not specifically protected under the FHA, however, is not dispositive. As the authorities discussed above have noted, being a victim of domestic violence, under certain circumstances, can give rise to a claim of sex or gender discrimination under the FHA. Thus, summary judgment against Plaintiff's housing discrimination claims is not warranted simply because those claims are based on her status as a domestic violence victim. The relevant inquiry is whether there is a genuine dispute of material fact regarding whether she has made a *prima facie* claim for gender or sex discrimination under the FHA as a result of her status as a domestic violence victim.

   3.  **Analysis of Plaintiff's Claim**

Plaintiff asserts that she was discriminated against because Defendant Herb, manager of Mountain Knolls (the apartment complex in which Plaintiff resided), wanted Plaintiff to vacate her apartment after an August 2015 domestic violence incident between Plaintiff and her ex-boyfriend that ended in the ex-boyfriend's arrest (the "Incident"). Defendants do not dispute that, after the Incident, Herb communicated to Plaintiff that other tenants in the apartment complex felt the arrest of Plaintiff's ex-boyfriend posed a safety risk to the community. It is also undisputed that Herb emailed Plaintiff—who left to stay with her mother after the incident—to express concerns that Plaintiff's apartment had been abandoned. Plaintiff offers no evidence, however, that Herb took any steps to evict Plaintiff or otherwise pressure her to leave her apartment. Although Plaintiff subjectively believes Herb's actions were an attempt to force Plaintiff to vacate her apartment because of the Incident, neither of Herb's actions give rise to the

inference that Herb unlawfully discriminated against Plaintiff because she was a victim of domestic violence or because of her gender.[3]

Plaintiff further claims that she was discriminated against in the terms and conditions of her rent because Defendants never repaired the damage to Plaintiff's carpet and closet doors caused during the Incident. Plaintiff, however, offers no evidence that Defendants made repairs of similar damage for any other tenants within a similar time frame. It may well be that a reasonable landlord would repair carpet and closet doors within six months (the damage occurred in August 2015 and the fire occurred in February 2016, so the window of time for the repairs was six months). For a claim of disparate treatment, however, Plaintiff must provide some evidence that she was treated differently than other tenants. Plaintiff offers no evidence relating to repairs of any other tenant. Accordingly, Plaintiff has not shown that she was treated differently in the terms and conditions of her unit because of her sex or gender.

Finally, Plaintiff claims that she was discriminated against when Defendants did not provide her a replacement unit or storage after her unit was damaged by a fire caused by neighboring tenant. Although other tenants were provided with alternative units after the fire, it is undisputed that Plaintiff did not ask whether other units were available or apply to another property owned by Guardian. Instead, Plaintiff chose to use her renter's insurance policy to rent a hotel room. Nor has Plaintiff shown that Defendants *sua sponte* offered units to other tenants but did not make the same offer to her. Additionally, Defendants did not tell Plaintiff that she could not apply to another Guardian-owned property. Because Plaintiff has not shown that she

---

[3] Plaintiff also asserts that Herb accused her of intoxication following the Incident. Plaintiff, however, offers no explanation as to how such an accusation was discriminating against Plaintiff because of her sex, gender, or status as a victim of domestic violence.

requested and was denied a rental relationship, or was otherwise treated in differently than other tenants, she has not shown discriminatory treatment.

To the extent that Plaintiff's status as victim of domestic violence might constitute gender or sex discrimination under the FHA, she has not shown a genuine issue of material fact that she was discriminated against because of her status as a victim of domestic violence or because of her sex or gender. Even when considering the facts in the light most favorable to Plaintiff, the evidence does not support an FHA discrimination claim. Accordingly, summary judgment on this claim is warranted.

## CONCLUSION

The Court **ADOPTS** in part Judge You's Findings and Recommendation (ECF 41), as set forth herein. Defendants' motion for summary judgment (ECF 18) is **GRANTED**.

**IT IS SO ORDERED.**

DATED this 22nd day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge